1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

FRIDA VISSUET,

                                    Plaintiff,

    vs.

INDYMAC MORTGAGE SERVICES;
QUALITY LOAN SERVICE CORP.; and
DOES 1-100,

                                    Defendants.

CASE NO. 09-CV-2321 - IEG (CAB)

ORDER GRANTING IN PART AND
DENYING IN PART ONEWEST'S
MOTION TO DISMISS

[Doc. No. 16]

        Currently before the Court is a Motion to Dismiss the First Amended Complaint brought by

Defendant OneWest Bank, FSB as Successor in Interest to Certain Assets and Liabilities of IndyMac

Bank, FSB ("OneWest"). Having considered the parties' arguments, and for the reasons set forth

below, the Court **GRANTS IN PART and DENIES IN PART** the motion.

                                    **BACKGROUND**

**I.      Parties**

        Frida Vissuet ("Vissuet") is the owner of certain real property commonly known as 2234

MOROSE STREET, LEMON GROVE, CALIFORNIA 91945 ("Property").

        OneWest is the current owner of all beneficial interest under the Deed of Trust executed by

Vissuet. The original lender under the Deed of Trust was PacificBanc Mortgage. (Def. MTD, Ex. A.)

OneWest became the beneficial owner on July 13, 2009, through an assignment by Mortgage

1   Electronic Registration Systems, Inc., acting as a nominee for PacificBanc Mortgage. (Id., Ex. C.) The

2   Assignment of Deed of Trust was recorded on July 23, 2009. (Id.)

3          Quality Loan Services is the current trustee. The original trustee under the Deed of Trust was

4   LandAmerica Southland Title. (Id., Ex. A.) Quality Loan Services was substituted as a trustee on June

5   20, 2009. (Id., Ex. D.) The Substitution of Trustee was recorded on August 4, 2009. (Id.)

6   **II.      Factual background**

7          On July 24, 2007, Vissuet executed a Deed of Trust securing a loan in the amount of $360,000

8   from PacificBanc Mortgage. According to Vissuet, this was an Alternative-A loan,[1] and it consisted

9   of a "refinance" of the first deed on the Property. (FAC ¶ 4.) On June 20, 2009, after Vissuet defaulted

10  on her loan, Quality Loan Services recorded and served a Notice of Default on the Property. (See Def.

11  MTD, Ex. B.) On September 25, 2009, Quality Loan Services recorded a Notice of Trustee's Sale of

12  the Property in the amount of $379,660.17, setting October 15, 2009 as the date of sale. (Id., Ex. E.)

13         Upon receipt of the Notice of Trustee's Sale, Vissuet contacted IndyMac and requested loan

14  modification. She was allegedly told that if she completed and submitted the loan modification

15  application, IndyMac would postpone the trustee's sale. (FAC ¶ 9.) Vissuet alleges that based upon

16  that promise, she completed and submitted her loan modification application. (Id. ¶ 10.) However,

17  after Vissuet submitted the application, she was informed by IndyMac that there was nothing that

18  could be done to stop the trustee's sale of the Property. (Id.) As a result, Vissuet filed the present suit.

19  After the action was commenced, Vissuet received in the mail two additional letters from IndyMac,

20  dated November 2 and November 5, indicating that IndyMac was willing to work with Vissuet on a

21  loan modification. (See, e.g., id., Ex. B.)

22  **III.     Procedural background**

23         Vissuet filed the present complaint on October 13, 2009, in the Superior Court for the County

24

25         [1] An "Alternative-A" loan ("Alt-A loan") refers to a type of a subprime loan. "The prime rate

26  is the 'base rate that banks use in pricing commercial loans to their best and most creditworthy
    customers.'" In re MoneyGram Int'l, Inc. Sec. Litig., 626 F. Supp. 2d 947, 958 n.6 (D. Minn. 2009)

27  (citation omitted). "Prime borrowers as a group generally receive the same terms from most lenders,
    while subprime borrowers are sorted into a number of different risk classes. . . . Borrowers who have

28  prime credit scores but cannot provide full income documentation, or otherwise pose a higher risk,
    are considered 'Alt-A' borrowers." Todd J. Zywicki & Joseph D. Adamson, *The Law and Economics
    of Subprime Lending*, 80 U. COLO. L. REV. 1, 7 (2009) (citations omitted).

1   of San Diego, alleging four causes of action. OneWest subsequently removed the case to this Court

2   on October 19, 2009. On November 10, 2009, Vissuet moved for a Temporary Restraining Order

3   ("TRO") to avoid an impending trustee's sale. The Court granted the motion for TRO and scheduled

4   a hearing on the preliminary injunction for November 23, 2009. After the hearing, the Court denied

5   the request for preliminary injunction and dissolved the TRO. [Doc. No. 12]. On December 4, 2009,

6   Vissuet filed her First Amended Complaint ("FAC"), alleging five causes of action: (1) for predatory

7   lending against IndyMac; (2) for breach of contract against all Defendants; (3) for fraud against all

8   Defendants; (4) for violation of Section 2923.52 et seq. of the California Civil Code against all

9   Defendants; and (5) for declaratory and injunctive relief against all Defendants. [Doc. No. 14].

10          Subsequently, on January 13, 2010, OneWest filed the present Motion to Dismiss the FAC

11   pursuant to Fed. R. Civ. P. 12(b)(6). Vissuet filed a late opposition, and OneWest filed a reply.[2]

## LEGAL STANDARD

13          A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A

14   complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is

15   plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court may dismiss

16   a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts

17   under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Cal., 88 F.3d 780,

18   783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting

19   all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party.

20   al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

21          Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal,

22   --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff]

23   can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State

24   Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded

25   factual allegations, a court should assume their veracity and then determine whether they plausibly

26   give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

27   _____

28          [2] Although Plaintiff's opposition was untimely, the Court will exercise its discretion to accept it. See CIV. L.R. 7.1(e)(7). Plaintiff's counsel, however, is cautioned that another such missed deadline could result in the opposing party's motion being granted. See CIV. L.R. 7.1(f)(3)(c).

1
**DISCUSSION**

2
**I.      Failure to tender**

3
OneWest first asserts that the entire FAC should be dismissed due to Plaintiff's failure to

4
allege or make an actual tender. OneWest relies on an apparent maxim in the context of foreclosures

5
known as the "tender rule," pursuant to which a borrower who has defaulted must first do equity

6
himself before requesting the Court to stop or set aside the foreclosure proceedings. However, a

7
review of the cases cited by OneWest indicates that the California "tender rule" applies only where

8
the plaintiff is trying to *set aside* a foreclosure sale due to some irregularity. See, e.g., Nguyen v.

9
Calhoun, 105 Cal. App. 4th 428, 439 (2003) (plaintiff's purchase of the subject property before the

10
sale took place); Abdallah v. United Sav. Bank, 43 Cal. App. 4th 1101, 1109 (1996) (irregularity in

11
the sale procedure); U.S. Cold Storage v. Great Western Sav. & Loan Ass'n, 165 Cal. App. 3d 1214,

12
1225 (1985) (irregularity in the sale notice); Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575,

13
578 (1984) (irregularity in the sale notice); Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112,

14
118 (1971) (voidable sale under a deed of trust)

15
In the present case, however, the trustee's sale has not occurred yet, and OneWest has failed

16
to cite to any case that would establish a similar bright-line rule requiring tender where the plaintiff

17
is merely attempting to *prevent* a trustee sale from proceeding.[3] Moreover, it is well-established that

18
"an offer to pay debt may not be required where doing so would be inequitable." See Pantoja v.

19
Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009) (citations omitted).As

20
the California Supreme Court has stated:

21
> [T]here are not a few cases holding that, where a party has the right to avoid a sale, he
> is not bound to tender any payment in redemption. Whatever may be the correct rule,

22
> viewing the question generally, it is certainly not the law that an offer to pay the debt
> must be made, where it would be inequitable to exact such offer of the party

23
> complaining of the sale. Under the circumstances disclosed by this record, the
> defendant would be subjected to very evident injustice and hardship if her right to

24
> attack the sale were made dependent upon an offer by her to pay the whole debt.

25
Humboldt Sav. Bank v. McCleverty, 161 Cal. 285, 291 (1911) (internal citations omitted).

26

27
[3] The only case that is somewhat relevant is Meetz v. Mohr, 141 Cal. 667, 673 (1904), where
the California Supreme Court concluded that tender was required before a sale under a trust deed

28
could be enjoined. In the present case, however, the Court has already determined that Plaintiff is not
entitled to an order enjoining the trustee's sale. [See Doc. No. 12].

1  Accordingly, because Plaintiff alleges improprieties with the origination and servicing of her loan, and

2  because the trustee sale has not taken place yet, the Court declines to require Plaintiff to make or

3  allege an actual tender at this time.

4  **II.      First cause of action for predatory lending (against IndyMac)**

5          In her first cause of action, Plaintiff alleges that the subject loan was accomplished by the use

6  of predatory lending because Defendants knew or should have known that the loan was one that

7  Plaintiff should not have qualified for. (FAC ¶¶ 17-19.) In moving to dismiss this cause of action,

8  OneWest argues that the term "predatory lending" is very expansive and that Plaintiff's FAC does not

9  really provide notice to OneWest of the allegations against it. The Court agrees.

10          First, Plaintiff fails to indicate any legal basis for her "predatory lending" cause of action. As

11  a result, both the Court and OneWest are left to guess whether this cause of action is based on an

12  alleged violation of federal law, state law, common law, or some combination of the above.[4] Second,

13  Plaintiff fails to plead sufficient facts to support her claim of "predatory lending." Notably, Plaintiff

14  does not allege that she signed the documents based on duress or fraud, that there were terms in the

15  loan documents she did not understand, or that some mandated disclosures were not provided to her.

16  Rather, Plaintiff alleges IndyMac did not factor her ability to pay the loan, her creditworthiness, or

17  her ability to pay the adjusted monthly payments in the future when providing Plaintiff with the loan;

18  but she does not allege whether any of that information was available to IndyMac at the relevant time

19  or how that amounted to "predatory lending." (See FAC ¶¶ 17-19.) Accordingly, because Plaintiff has

20  failed to provide the "grounds"–both factual and legal–of her "entitlement to relief," the Court

21  **GRANTS** OneWest's Motion to Dismiss and **DISMISSES WITH LEAVE TO AMEND** the first

22  cause of action for "predatory lending." See Twombly, 550 U.S. at 555.

23  **III.     Second cause of action for breach of contract (against all Defendants)**

24          In her second cause of action, Plaintiff alleges that in exchange for her promise to complete

25  and submit to IndyMac a loan modification application, IndyMac promised to postpone the trustee's

26  sale on the subject property. (FAC ¶ 23.) According to Plaintiff, she performed her portion of this oral

27  ─────────────

28          [4] The fact that there might not be an established, objective definition of the term "predatory lending," as Plaintiff argues in her reply, does not change the fact that Plaintiff must specify some legal basis for her cause of action.

1  contract, and IndyMac breached its obligation when it failed to postpone the trustee's sale. (Id. ¶ 24.)

2  In its motion to dismiss, OneWest denies that any oral contract was formed between the parties, and

3  in the alternative argues that any such contract would be unenforceable due to lack of certainty

4  regarding the material terms and because it violates the Statute of Frauds.

5      The Court is not persuaded by the argument that the alleged agreement *by itself* violates the

6  Statute of Frauds. Section 1624(a)(6), on which OneWest relies, provides only that "[a]n agreement

7  by a purchaser of real property *to pay an indebtedness secured* by mortgage or deed of trust upon the

8  property purchased" is invalid unless made in writing and subscribed by the party to be charged. CAL.

9  CIV. CODE § 1624(a)(6) (emphasis added). Plaintiff's second cause of action, however, alleges an oral

10  contract where IndyMac promised to postpone the trustee's sale in exchange for Plaintiff's promise

11  to complete and submit a loan modification application. (FAC ¶ 23.) This agreement is not for any

12  obligation "to pay an indebtedness secured" and therefore is not covered by Section 1624(a)(6).

13      Rather, the proper challenge to the validity of an oral modification of a deed of trust is through

14  Section 1698. See Secrest v. Sec. Nat'l Mortgage Loan Trust 2002-2, 167 Cal. App. 4th 544, 553

15  (2008) (concluding that an agreement that "altered the lender's ability to exercise a right to foreclose

16  under the note and deed of trust due to the borrower's default" amounted to a modification, which

17  must comply with the requirements of Section 1698). Section 1698 provides that a contract in writing

18  may only be modified (1) in writing, (2) by an executed oral agreement, or (3) by an oral agreement

19  supported by new consideration. CAL. CIV. CODE § 1698(a)-(c). The California Supreme Court has

20  held that "if there exists sufficient consideration for an oral modification agreement, then full

21  performance by the promisee alone would suffice to render the agreement 'executed' within the

22  meaning of section 1698." Raedeke v. Gibraltar Sav. & Loan Ass'n, 10 Cal. 3d 665, 673 (1974)

23  (concluding that the borrowers had a cognizable cause of action at law because they relied on the

24  lender's promise to postpone the foreclosure sale if they obtained a solvent buyer).

25      In the present case, adequate consideration can be found in the form of Plaintiff's completion

26  and submission of the loan modification application. The application was not something Plaintiff was

27  required to do under the original contract, and if not for the application, Plaintiff alleges she would

28  have spent the time pursuing alternate measures to avoid the foreclosure. See Pope v. Sav. Bank of

1  <u>Puget Sound</u>, 850 F.2d 1345, 1356 (9th Cir. 1988) ("We recall the first lesson in contracts, the

2  peppercorn theory–that courts will not inquire into the adequacy of consideration, so long as it was

3  true and valuable."). Accordingly, because Plaintiff has alleged sufficient facts that there was

4  "sufficient consideration" for an oral modification and that she has fully performed her part of the

5  contract, Plaintiff's second cause of action is not barred by Section 1698. See  <u>Raedeke</u>, 10 Cal. 3d

6  at 673.

7        Moreover, Plaintiff can state a cause of action even in the absence of actual consideration.

8  Thus, "the doctrine of promissory estoppel is used to provide a substitute for the consideration which

9  ordinarily is required to create an enforceable promise. . . . 'The purpose of this doctrine is to make

10  a promise binding, under certain circumstances, without consideration in the usual sense of something

11  bargained for and given in exchange." <u>Id.</u> at 672. "'Under this doctrine a promisor is bound when he

12  should reasonably expect a substantial change of position, either by act or forbearance, in reliance on

13  his promise, if injustice can be avoided only by its enforcement.'"[5] <u>Id.</u> at 672 n.1. In the present case,

14  Plaintiff has sufficiently alleged that: (1) IndyMac made a promise that it would postpone the sale if

15  Plaintiff completed and submitted the loan modification application; (2) IndyMac should have

16  reasonably expected that Plaintiff would rely on that promise; (3) Plaintiff in fact did rely on that

17  promise by spending time to complete the application rather than pursuing alternate measures to avoid

18  the foreclosure; and (4) if the promise is not enforced, injustice will occur in the form of a foreclosure

19  on Plaintiff's property.[6] (<u>See</u> FAC ¶¶ 10, 22-25.) Accordingly, even in the absence of actual

20  consideration, Plaintiff has pled sufficient facts for her second cause of action to withstand a motion

21

22

23        [5] The doctrine of promissory estoppel is not precluded by Section 1698. <u>See</u> CAL. CIV. CODE § 1698(d) ("Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel . . . .").

24

25        [6] OneWest also argues that the oral contract is unenforceable due to lack of certainty regarding the material terms. Section 3390 provides that an agreement, "the terms of which are not sufficiently

26  certain to make the precise act which is to be done clearly ascertainable," cannot be specifically enforced. CAL. CIV. CODE § 3390(5). "However, the law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to

27  carry into effect the reasonable intentions of the parties if they can be ascertained." <u>Patel v. Liebermensch</u>, 45 Cal. 4th 344, 349 (2008) (internal quotation marks and citations omitted). As the

28  above recitation of the promissory estoppel factors demonstrates, the material terms of the alleged oral contract are sufficiently ascertainable in this case to be specifically enforced by the Court.

1  to dismiss.[7] See Sutherland v. Barclays Am. / Mortgage Corp., 53 Cal. App. 4th 299, 312 (1997)

2  (concluding that Plaintiff could proceed with her cause of action for breach of contract where she

3  detrimentally relied on the defendant's statement that she could postpone three mortgage payments).

4  **III.     Third cause of action for fraud (against all Defendants)**

5  In her third cause of action, Plaintiff alleges she was defrauded by Defendants when they

6  promised to postpone the trustee's sale if she filed her application, and then failed to do so. (FAC ¶¶

7  27-29.) Plaintiff argues that this conduct constituted a fraudulent business practice because IndyMac

8  failed to act in good faith and deal fairly with Plaintiff. (Id. ¶ 30.) Finally, Plaintiff alleges that this

9  is a wide-spread practice by IndyMac, whereby it promises to postpone the trustee's sales upon the

10  borrowers' submission of their loan modification applications and subsequently either falsely claims

11  that it did not receive the applications or all of the documentation, or proceeds with the trustee's sales

12  regardless of what the borrowers do. (Id. ¶ 33.) OneWest moves to dismiss this cause of action,

13  arguing there is no obligation to modify the loan, and that in any event Plaintiff has failed to plead the

14  necessary elements to support a claim for fraud with required particularity.

15  As an initial matter, OneWest misunderstands Plaintiff's third cause of action. Specifically,

16  this cause of action appears to be based on OneWest's obligation to modify the loan *as agreed* in the

17  oral contract, and *not* on any duty under the California Civil Code. (See FAC ¶¶ 26-29.)

18  Nonetheless, the Court agrees that Plaintiff has failed to plead her cause of action for fraud

19  with the required particularity. To recover for common law fraud under California law, Plaintiff must

20  demonstrate: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable

21  reliance, and (5) resulting damage. Gil v. Bank of Am., N.A., 138 Cal. App. 4th 1371 (2006) (citation

22  omitted). Moreover, Federal Rule of Civil Procedure 9(b) requires allegations of fraud or mistake to

23

24  [7] OneWest's reliance on Secrest to defeat this argument is unavailing. In Secrest, the Court of Appeals expressly found that the plaintiffs "do not assert they changed their position in reliance on the January 2002 Forbearance Agreement in any way other than by making the downpayment." 167

25  Cal. App. 4th at 556. According to the court, this was insufficient for purposes of promissory estoppel. Id. at 555-56. In contrast, Vissuet asserts that she changed her position in reliance on OneWest's

26  promise by completing and submitting the application, as well as by foregoing an opportunity to pursue alternate measures for avoiding the foreclosure. (See FAC ¶¶10, 22-25.) This alleged reliance

27  is based on more than a mere payment of money and is  sufficient to take the contract out of the Statute of Frauds. See Sutherland v. Barclays Am. / Mortgage Corp., 53 Cal. App. 4th 299, 312 (1997)

28  (concluding that Plaintiff could proceed with her cause of action for breach of contract where she detrimentally relied on the defendant's statement that she could postpone three mortgage payments).

1    be stated "with particularity." In the Ninth Circuit, this rule "has been interpreted to mean the pleader

2    must state the time, place and specific content of the false representations as well as the identities of

3    the parties to the misrepresentation." <u>Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp.</u>,

4    661 F.2d 776, 782 (9th Cir.1981) (citations omitted); <u>see also</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317

5    F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when,

6    where, and how' of the misconduct charged." (citation omitted)). Thus, where multiple defendants are

7    involved, "a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent

8    scheme.'" <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 765 (9th Cir.2007) (quotation omitted).

9          In the present case, as OneWest points out, Plaintiff has failed to identify who she talked to,

10   what specifically was promised, and why there was any knowledge of falsity. As such, the third cause

11   of action fails to comply with Rule 9(b) because it is not "specific enough to give defendants notice

12   of the particular misconduct ... so that they can defend against the charge and not just deny that they

13   have done anything wrong." <u>See</u> <u>Vess</u>, 317 F.3d at 1106 (internal quotation marks and citation

14   omitted). Accordingly, the Court **GRANTS** the Motion to Dismiss in this regard and **DISMISSES**

15   **WITH LEAVE TO AMEND** Plaintiff's third cause of action.

16   **IV.    Fourth cause of action for violation of California Civil Code Section 2923.52 et seq.
           (against all Defendants)**

17

18         In her fourth cause of action, Plaintiff alleges Defendants are in violation of Section 2923.52

19   et seq. of the California Civil Code because they have not implemented a viable loan modification

20   program. (FAC ¶¶ 34-36.) Specifically, with respect to her, Plaintiff alleges Defendants failed to offer

21   her a viable loan modification program. (<u>Id.</u> ¶ 37.) Accordingly, because they failed to implement a

22   viable loan modification program, Plaintiff alleges Defendants were "required to extend the notice of

23   default period an additional 90 days," including with respect to Plaintiff's loan. (<u>Id.</u> ¶¶ 38-39.)

24         Plaintiff's fourth claim essentially boils down to two arguments. First, it appears Plaintiff

25   argues Defendants had an obligation to provide her with a loan modification program. However,

26   "nothing in Cal. Civ. Code § 2923.6 imposes a duty on servicers of loans to modify the terms of loans

27   or creates a private right of action for borrowers." <u>Farmer v. Countrywide Home Loans</u>, No. 08cv2193

28   BTM (AJB), 2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009); <u>accord</u> <u>Pantoja v. Countrywide Home</u>
     <u>Loans</u>, 640 F. Supp. 2d 1177, 1188 (N.D. Cal. 2009).

1  Second, and in the alternative, Plaintiff appears to argue that Defendants had to provide her

2  with additional 90 days after the notice of default. Normally, notice of sale cannot be given less than

3  three months from the filing of the notice of default.[8] CAL. CIV. CODE § 2924(2), (3). However, under

4  the California Foreclosure Prevention Act, Cal. Civ. Code §§ 2923.52 et seq., with regard to certain

5  residential loans, lenders are required to provide the borrower with *additional* 90 days. The longer

6  period applies only if all of the following criteria are met: (1) the loan was recorded during the period

7  of January 1, 2003 to January 1, 2008; (2) the loan at issue is "the first mortgage or deed of trust that

8  the property secures;" (3) the borrower "occupied the property as the borrower's principal residence

9  at the time the loan was delinquent;" and (4) the notice of default has been recorded on the property.

10  Id. § 2923.52(a). If Section 2923.52 does not apply to the particular sale at hand, that fact must be

11  expressly stated in the Notice of Sale. Id. § 2923.54.

12  In the present case, Plaintiff has failed to allege sufficient facts to show that she was entitled

13  to the additional 90 days. Notably, the FAC expressly provides that Plaintiff's loan "consisted of a

14  *refinance* of a first trust deed on [the Property]." (FAC ¶ 4 (emphasis added).) However, to qualify

15  for the longer period, the loan must have been "the *first mortgage* or deed of trust that the property

16  secures."[9] See CAL. CIV. CODE § 2923.52(a)(2) (emphasis added). Moreover, Section 2923.52 does

17  not apply in this case because OneWest obtained a permanent exemption from the Department of

18  Financial Institutions pursuant to Section 2923.53.[10] See Dep't of Fin. Inst., California Foreclosure

19  Prevention Act, http://www.dfi.ca.gov/cfpa/default.asp (last visited March 11, 2010). As required by

20

21

22  [8] In the present case, it is clear that Defendants complied with the regular waiting period of three months under Section 2924 because the Notice of Sale was recorded on September 25, 2009, while the Notice of Default was recorded on June 20, 2009. (See Def. MTD, Exs. B, E.)

23

24  [9] A "first mortgage" is a mortgage "that is senior to all other mortgages on the same property." BLACK'S LAW DICTIONARY 1102 (9th ed. 2009). On the other hand, "refinancing" refers to "[a]n exchange of an old debt for a new debt, as by negotiating a different interest rate or term or by repaying the existing loan with money acquired from a new loan." Id. at 1394. Accordingly, if Plaintiff's loan was obtained to *refinance* her property, (FAC ¶ 4), the FAC on its face forecloses the argument that it was a "first mortgage" on the Property.

25

26

27  [10] Section 2923.53 provides in pertinent part: "A mortgage loan servicer that has implemented a comprehensive loan modification program that meets the requirements of this section shall have the loans that it services exempted from the provisions of Section 2923.52, upon order of the commissioner." Cal. Civ. Code § 2923.53(a).

28

1    Section 2923.54, this fact was expressly stated in the Notice of Sale sent to Plaintiff.[11] (See Def. MTD,

2    Ex. E.) For the foregoing reasons, the Court **GRANTS** OneWest's Motion to Dismiss and

3    **DISMISSES WITH PREJUDICE** Plaintiff's fourth cause of action.

4    **V.      Fifth cause of action for declaratory and injunctive relief (against all Defendants)**

5            Finally, OneWest moves to dismiss Plaintiff's fifth cause of action seeking declaratory and

6    injunctive relief. According to OneWest, Plaintiff's declaratory relief action fails because she seeks

7    to redress past wrongs, rather than declaration of her future rights. Moreover, OneWest argues the

8    request for declaratory relief is entirely commensurate with relief sought through the other causes of

9    action. Finally, OneWest argues Plaintiff is not entitled to injunctive relief because: (1) it is a remedy,

10   and not a cause of action; (2) it is unavailable because Plaintiff has failed to do equity herself; and (3)

11   it is unavailable to Plaintiff because she has slept on her rights.

12           Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate

13   pleading, may declare the rights and other legal relations of any interested party seeking such

14   declaration, whether or not further relief is or could be sought." Declaratory relief, however, may be

15   unnecessary where an adequate remedy exists under some other cause of action. See Mangindin v.

16   Wash. Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). Likewise, "[d]eclaratory relief should

17   be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in

18   issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by

19   the parties." United States v. Washington, 759 F.2d 1353, 1356-57 (9th Cir. 1985) (en banc) (per

20   curiam) (citations omitted). In the present case, Plaintiff's request for declaratory relief is not

21   redundant in the face of the other causes of action, and it may be useful in clarifying the legal relations

22

23           [11] The Notice of Sale in this case expressly provided that:

24           Pursuant to California Civil Code § 2923.54 the undersigned, on behalf of the
             beneficiary, loan servicer or authorized agent, declares as follows:

25           [ 1 ] The mortgage loan servicer has obtained from the commissioner a final or
             temporary order of exemption pursuant to Section 2923.53 that is current and valid on
26           the date the notice of sale is filed;

27           [ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section
             2923.52 does not apply pursuant to Section 2923.52.
28

     (Def. MTD, Ex. E.)

1  between the parties. Specifically, Plaintiff wants the Court to adjudge whether she is entitled to a good

2  faith evaluation of her loan modification application, and if so, whether Defendants are then required

3  to make a good faith offer to modify her loan and cancel the currently pending trustee's sale. (FAC

4  ¶¶ 43-44.) Because the relief sought is different from what is sought in the remaining four causes of

5  action, the Court **DENIES** OneWest's Motion to Dismiss in this regard. See StreamCast Networks,

6  Inc. v. IBIS LLC, No. CV 05-04239 MMM (Ex), 2006 WL 5720345, at **3-5 (C.D. Cal. May 2,

7  2006) (denying defendant's motion to dismiss the declaratory relief claim where the claim sought a

8  declaration that plaintiff could terminate the agreement in the future and retain the advance payment

9  without liability, which was different than the relief sought in plaintiff's breach of contract claim).

10        On the other hand, the Court agrees with OneWest that injunctive relief "is a remedy and not,

11  in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."

12  See Shell Oil Co. v. Richter, 52 Cal. App. 2d 164, 168 (1942) (citation omitted). Accordingly, the

13  Court **GRANTS** the Motion to Dismiss in this regard and **DISMISSES WITH PREJUDICE** the

14  *cause of action* for injunctive relief. Plaintiff's request for injunctive relief as a *remedy*, however,

15  remains viable–provided Plaintiff is successful on the merits of one of her remaining causes of action.

16                                      **CONCLUSION**

17        For the foregoing reasons, the Court ORDERS as follows:

18        (1)    OneWest's Motion to Dismiss Plaintiff's first and third causes of action is **GRANTED**,

19  and those causes of action are **DISMISSED WITH LEAVE TO AMEND**. Plaintiff shall have

20  **twenty (20) days** from the date of the filing of this Order to file a Second Amended Complaint.

21        (2)    OneWest's Motion to Dismiss Plaintiff's fourth cause of action and fifth cause of action

22  seeking injunctive relief is **GRANTED**, and those causes of action are **DISMISSED WITH**

23  **PREJUDICE**.

24        (3)    OneWest's Motion to Dismiss is **DENIED** in all other respects.

25        **IT IS SO ORDERED.**

26

27  DATED: March 19, 2010

28                                      IRMA E. GONZALEZ, Chief Judge
                                    United States District Court